Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
Advertisement was duly made for proposals for remodeling and installing hydrotherapeutic apparatus at the Government’s naval hospital near Norfolk, Ya. The claimant filed four separate bids, varying from $5,490 to $5,900, the difference being made by the kind of fixtures to be used as mentioned in the bids. His proposal at $5,650 was duly accepted at the opening; of the bids on April 26, 1910. On the day following the opening of the bids, the claimant wrote the Chief of the Bureau of Supplies and Accounts stating that it had just come to his notice that the contractors who figured with claimant for said work and materials did not include the marblework, as claimant expected would be done, and that, therefore, he asked that the amount for the marble-work, which was stated to be $1,513, be added to the amount of his bid. The bureau questioned “the propriety of permitting any bidder to correct the amount of his bid after the public opening of proposals,” and declared that either the contract should be awarded at the amount of his original proposal or his bid be rejected. The claimant was accordingly notified that the increasing of his bid as suggested was not permissible, but that it could be rejected and the contract awarded to another bidder. Thereupon, on May 2, the claimant expressed a desire to accept the contract at the *157 original bid, and the Assistant Secretary notified him that his bid was accordingly accepted; that forms of contract and bonds would be forwarded to him; and that the department would “ expect the work to be done in a manner that will meet the specification requirement in all respects.”
The contract, a copy of which is attached to the petition herein, was subsequently executed. Offered, as he was, an opportunity to withdraw his bid upon discovering the omission of the cost of the marblework, he declined the offer. Clearly the board could not permit an alteration in his bid after its acceptance. It is unnecessary for us to say more than that he was treated with liberality and fairness when given an opportunity to withdraw the bid entirely. He can not now complain that his bid was too low, and he does not make that fact an item for recovery.
The work was to be completed within four months from the date of the contract — that is, by November 8, 1910 — and was not completed until July 26, 1911, a period of 258 days more than the four months. The contract provided for liquidated damages, which it was agreed should be one-tenth of 1 per cent of the contract price for each day of delay in completion of the work beyond the four months period, amounting to $5.65 for each day’s delay. After the work was done and accepted the claimant, having in the meantime been paid the sum of $1,883.83, the Government deducted the sum of $1,457.70 as liquidated damages and offered to pay him the balance of the contract price, $2,308.97, as full payment of the work under the contract. This tender was refused. The real contention, therefore, is whether claimant is entitled to recover said sum of $1,457.70, or any part of it, the Government conceding he is entitled to said sum of $2,308.97 which was tendered him.
It is well established that parties may stipulate for and agree in their contract upon liquidated damages in case of delay in performance. Sun Printing Co. v. Moore, 183 U. S., 642; Bethlehem Steel Co. case, 205 U. S., 105, 119; Pacific Hardware Co. case, 49 C. Cls., 327. In the last-named case we had occasion to consider the question where the contract provided for liquidated damages stated at one-tenth of 1 per *158 cent per day of tbe agreed price. Tbe uncertainty of tbe amount and impracticability of making proof of actual damages frequently afford tbe reason for sustaining sucb a provision. We see no reason in the instant case why the amount fixed by tbe parties as liquidated damages should not be enforced according to tbe agreement. Because the amount may look large in comparison with tbe entire contract price, owing to tbe length of tbe delay, does not furnish tbe criterion for determining the question, which should be considered from tbe standpoint of parties when they made tbe contract instead of their standpoint after tbe delays bad occurred and the liquidated-damage clause bad been applied.
It is, however, insisted for claimant that tbe delay in completing the work was due in whole or in part to the fault of the Government or its agents. If the claimant’s delay in performance was caused by the defendants, he could not be charged with liquidated damages during the period of the' delay so occasioned. District of Columbia v. Camden Iron Works, 181 U. S., 453.
The contract provided that claimant could apply for an extension of time, but this he did not do at any time before the completion of the work. After the work had been finished the contractor asked that the damages be not assessed against him, and this request, after investigation, was refused upon the ground .that he and not the Government was responsible for the delays. The evidence satisfies us that the delays were occasioned by claimant, or, more accurately, by the subcontractors, for whose acts or defaults in that connection he must be held to have been responsible. The work to be done was of a particular character, requiring the installation of special, fixtures and appliances, and claimant proves that he was experienced in and had made a speciality of the installation of hydrotherapeutic apparatus and fixtures, which, he explains, is for the purpose of giving treatment for nervous and other diseases and which, “ owing to the immense amount of water used in connection with those fixtures,” necessitated specially prepared floors made watertight. If he had not the necessary knowledge or experience, which he did have, we should have to assume that he had it when he undertook to do the designated work. Clark v. *159 Pope, 70 Ill., 128. Nor can. the delay, if any, of the manufacturers avail him, because his contract provided that certain' apparatus was to be of a named manufacture, and it was incumbent upon him to ascertain before he made his bid or contract whether the manufacturer would furnish it in time. For his damages, if any, occasioned by the manufacturer’s delay, his remedy is not against the Government.
A change was ordered or authorized of a certain steel door, which was ready to be hung, and a wooden door was substituted. This steel door was a complete loss to the claimant, and there may have been a few days’ delay in making the change. Adjusting this as best we may under the rather indefinite proof we think he should be allowed $95 for that door and delay.
While the amount of liquidated damages may appear large in comparison with the amount of the contract price, the facts show an expenditure of over $1,200 by the Government for cost of inspection during the period of delay, besides the deprivation of the use of the completed work and the treatment which the proof shows patients were waiting to take.
Our judgment will be that the claimant recover of the defendants the said sum of $2,308.97 which had been tendered to him as aforesaid, and the said sum' of $95, shown by Finding VII, making an aggregate of $2,403.97. And it is so ordered.
All concur.